**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CINDY GIANFRANCESCO,                          :
    *Plaintiff*                                      :
                                                     :
                                                     :
    v.                                               :          **C.A. No. 1:24-**
                                                     :
BJ'S WHOLESALE CLUB, INC., alias,              :          <u>**Jury Trial Demanded**</u>
    *Defendant*                                      :
                                                     :

**COMPLAINT**

### I.    <u>Introductory Statement</u>

1.    This action is brought by Cindy Gianfrancesco ("Plaintiff" or "Mrs. Gianfrancesco") against her former employer, BJ's Wholesale Club, Inc., ("BJ's" or "Defendant"). Mrs. Gianfrancesco, a Latina woman of color, alleges that BJ's subjected her to race and/or color discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the Rhode Island Fair Employment Practices act, R.I. Gen. Laws § 28-5-1 *et seq*. ("FEPA"), and the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws § 42-112-1, *et seq*. ("RICRA") by denying her a promotion, subjecting her to disparate treatment and discipline, and ultimately terminating her employment, all due to her race and/or color. Ms. Gianfrancesco is seeking compensatory and punitive damages, as well as counsel fees, costs, and other equitable relief resulting from discriminatory treatment and wrongful termination.

### II.    <u>Parties</u>

2.    Plaintiff Cindy Gianfrancesco is a resident of the City of Cranston, County of Providence, State of Rhode Island, and at all times relevant to this action was an employee employed by Defendant in the state of Rhode Island. She is a Latina woman with brown skin.

3.      BJ's Wholesale Club, Inc., alias, is a foreign corporation duly organized and incorporated under the laws of the State of Delaware, with a principal place of business located at 350 Campus Drive, Marlborough, MA 01752. BJ's is registered to do business in the State of Rhode Island and maintains several places of business within the State of Rhode Island, including a place of business located at 375 East Avenue, Warwick, RI 02886 ("Club 393").

### III.    Jurisdiction

4.      The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, Title VII.

5.      Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

6.      The United States District Court for the District of Rhode Island has personal jurisdiction over Defendant because at all times relevant to this action Plaintiff was employed at Defendant's Club 393 located in Warwick, Rhode Island.

### IV.    Venue

7.      Venue is proper in this Court insofar as Defendant is doing business in Rhode Island and. Therefore. is deemed to reside in the District of Rhode Island and a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.    Exhaustion of Administrative Remedies

8.      On or about May 30, 2023, Plaintiff co-filed a charge with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity

Commission ("EEOC") against Defendant, alleging discrimination on the basis of her race and/or color.

9.     Thereafter, more than one hundred and twenty (120) days but less than two (2) years having elapsed since filing of Plaintiff's charge of discrimination, Plaintiff elected to terminate the RICHR proceedings and have this matter heard in Court pursuant to R.I. Gen. Laws § 28-5-24.1(a).

10.     On  May 6, 2024, the RICHR issued Plaintiff a Notice of Right to Sue under the FEPA.

11.     On June 12, 2024, the EEOC issued Plaintiff a Notice of Right to Sue under Title VII.

12.     Accordingly, Plaintiff has satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit, and Plaintiff has timely filed this civil action.

13.     There is no requirement under the RICRA that a plaintiff exhaust administrative remedies.

## VI.     <u>Material Facts</u>

### *Factual Background*

14.     Mrs. Gianfrancesco is a Latina woman with brown skin.

15.     At all relevant times, Mrs. Gianfrancesco was employed by BJ's at Club 393.

16.     Mrs. Gianfrancesco was initially hired on or about April 18, 2022 working in the samples department on a part-time basis.

17.     In or around June 2022, Mrs. Gianfrancesco began working for BJ's full time in the produce department.

18.     Mrs. Gianfrancesco was subsequently elevated to the position of Person In Charge ("PIC") in or around November 2022, first temporarily and then on a permanent basis.

19.     As a PIC, Mrs. Gianfrancesco worked under the supervision of General Manager Timothy Sims ("General Manager Sims"). Her duties as PIC included opening and closing the store, handling pick-ups and drop-off of cash from the armored car service, and supervising other team members.

20.     Upon information and belief, at all relevant times during her employment with BJ's, Mrs. Gianfrancesco was the only Latina/o and person of color with managerial duties employed in Club 393.

21.     At all relevant times during her tenure with BJ's from on or about April 18, 2022, until the time of her termination on April 11, 2023, Mrs. Gianfrancesco was an exemplary, loyal, dedicated, and productive employee with excellent reviews and without any prior history of warnings or disciplinary actions.

22.     Despite being an exemplary, loyal, dedicated, and productive employee, Mrs. Gianfrancesco was treated differently in the workplace and subjected to discriminatory treatment, including termination of employment and denial of promotion, for no reason other than her race and color.

23.     Mrs. Gianfrancesco was falsely accused by BJ's of violent, threatening speech; as a Latina with brown skin, such an accusation is particularly harmful and offensive to her as it invokes racist stereotypes of people of African descent.

24.     The discriminatory treatment came to its ugly conclusion when Mrs. Gianfrancesco was terminated on April 11, 2023, under the pretext of false accusations of misconduct.  The allegations related to an incident involving two employees of BJ's, one of whom is Mrs. Gianfrancesco's brother, Gilbert Green, a Black and African American man.

***Defendant Ordered Plaintiff to Intervene in a Workplace Dispute***

25.    On March 19, 2023, Assistant Manager Patrick Gabriel ("Assistant Manager Gabriel"), who is White, instructed Mrs. Gianfrancesco to intervene in a verbal dispute between her brother Gilbert Green ("Mr. Green") and a White employee in the bakery department.

26.    Mrs. Gianfrancesco responded to Assistant Manager Gabriel that it would not be appropriate for her to intervene because the dispute involved her brother; nonetheless Assistant Manager Gabriel _insisted_ that she respond to the situation. Mrs. Gianfrancesco responded as directed.

27.    The White employee involved, known to Mrs. Gianfrancesco at the time only by the name, "Rocky," had a reputation for being confrontational with other employees in the bakery and was speaking in a loud, aggressive manner. Rocky is a male with a large build, and Plaintiff was concerned about possible confrontation, so she asked another male employee, Timothy Ward ("Mr. Ward"), to accompany her.

28.    When Mrs. Gianfrancesco arrived at the back of the store where her brother and Rocky were, she asked Rocky what was going on. Rocky responded with words to the effect of, "I'm not putting up with this anymore," and stormed out of the store.

29.    Assistant Manager Gabriel, who was on the phone in the office next to the area where Mrs. Gianfrancesco was attempting to speak with her brother and Rocky, with the door open, heard the exchange and said words to the effect of, "just let him go."

30.    Upon information and belief, Rocky did not return to work at BJ's. Mrs. Gianfrancesco's brother was fired approximately three days after the incident.

31.    Later in the day on March 19, Assistant Manager Gabriel told Mrs. Gianfrancesco that her brother was "lucky" that he did not call the police, because her brother is Black and would have been arrested.

32.    General Manager Sims was present at the store the day of the incident and did not express any concerns about how Mrs. Gianfrancesco handled the situation.

33.    General Manager Sims had never expressed any negative comments about Mrs. Gianfrancesco's performance at any time during her employment with BJ's.

### *Plaintiff's Termination*

34.    On April 11, 2023, Mrs. Gianfrancesco arrived at work early for a scheduled interview for a potential promotion to the position of Lead PIC.

35.    Instead of conducting the expected interview, Assistant Manager Gabriel informed Mrs. Gianfrancesco that she was being fired.  Andrew Goodrich, also an Assistant Manager, was present with Assistant Manager Gabriel for this meeting.

36.    Assistant Manager Gabriel handed Mrs. Gianfrancesco a BJ's Disciplinary Action Form, the first she had ever received.  The form was dated March 27, 2023.

37.    After Mrs. Gianfrancesco's name and address, the date, and the club number, the form reads "Disciplinary Action Level" and offers four boxes to check: Verbal Warning; Written Warning; Final Warning; and Separation of Employment.  The final box – Separation of Employment – was checked.

38.    Mrs. Gianfrancesco was not provided with explanation as to why BJ's separated her from employment instead of issuing standard progressive discipline via Verbal Warning, Written Warning, or Final Warning.

39.     The Disciplinary Action Form included a short narrative statement containing three (3) false allegations, all related to the March 19, 2023 incident:

  a.  That Mrs. Gianfrancesco discussed an employee's discipline in front of hourly team members;

  b.  That Mrs. Gianfrancesco "used an hourly team member as a witness;"[1] and,

  c.  That Mrs. Gianfrancesco was "overheard saying, 'I will punch him in the face,' referring to one of the bakery team members involved in the incident."

40.     The Disciplinary Action From did not state the source of these allegations nor any mention whatsoever of any investigation undertaken to assess the allegations.

41.     Mrs. Gianfrancesco had never been notified of any of these allegations, much less presented an opportunity to confront her accusers or at least to provide her own statement before the April 11 termination meeting.

42.     BJ's either completely fabricated the three (3) false allegations or relied on unsubstantiated statement or statements, without obtaining Mrs. Gianfrancesco's side of the story.

43.     The language used in the Disciplinary Action Form was condescending and insulting, particularly the statement that "in her role as a leader, [Mrs. Gianfrancesco] is expected to set an example, use sound judgment, and model the behavior that we expect in our organization."

44.     As a Latina woman of color who has conducted herself with the utmost professionalism and is well-liked by co-workers and customers alike, Mrs. Gianfrancesco was disgusted, angered, hurt, and demoralized by this outrageous and baseless allegation that she threatened to use physical violence on anyone.  There is *nothing* in her demeanor, in her conduct

---

[1] "Witness" in the sense it appears Assistant Manager Gabriel used it refers to where, at events such as coaching or disciplinary meetings with employees, a third individual is present as a neutral witness.  This designation hardly describes the capacity in which Plaintiff asked Mr. Ward to accompany me – as a safety and security measure in response to being ordered to intervene in a dispute between two men.

as an employee, or in the actual events that occurred on March 19, 2023, that justifies such an accusation, and Defendant knew or should have known the same.

45.    While Mrs. Gianfrancesco was being fired, she called Human Resources at the BJ's corporate office and spoke with Joanne Barry ("Ms. Barry").    While Ms. Barry alleged that that there had been an investigation concerning the incident, and this termination was the result, the details or findings of this investigation were never shared with Mrs. Gianfrancesco.

46.    In that phone call with Mrs. Gianfrancesco, Ms. Barry also told Mrs. Gianfrancesco that she knew that General Manager Sims believed Mrs. Gianfrancesco's side of the story.

47.    General Manager Sims had gone out on paternity leave on or about April 1, 2023, and was not present for the meeting when Assistant General Manager Gabriel fired Mrs. Gianfrancesco.

48.    Mrs. Gianfrancesco never had any further communication to or from General Manager Sims since he left for paternity leave.

49.    Upon information and belief, since the opening of this BJ's Club in April 2022, certain White employees who have received multiple disciplinary actions have not been terminated.

50.    Upon information and belief, at least one White employee was the subject of disciplinary action *while on final warning status* and still was not terminated.

51.    Following Mrs. Gianfrancesco's termination, BJ's promoted another, less qualified employee to the position of Lead PIC, a position for which Mrs. Gianfrancesco was scheduled to interview on the day she was fired.  That employee is White.

52.    Upon Mrs. Gianfrancesco's employment termination, all of the employees with managerial responsibilities at BJ's Club #393 were White.

53. Following Mrs. Gianfrancesco's employment termination, BJ's replaced her and/or had her job duties assumed by one of more employees who are not Latina/o and/or persons of color.

54. During Mrs. Gianfrancesco employment with BJ's, Mrs. Gianfrancesco had *never* been the subject of disciplinary action for any reason before the day that she was fired.

55. After Mrs. Gianfrancesco's employment termination, BJ's engaged in further discriminatory treatment by contesting Mrs. Gianfrancesco's right to collect Unemployment Insurance, claiming that she was terminated for "failing to follow company policy in regard to conduct."

### *Pretext and Discriminatory Animus*

56. BJ's intent to discriminate against Mrs. Gianfrancesco on account of her race and/or color is further established, in part, by conduct showing that BJ's reasons for treating Mrs. Gianfrancesco adversely were pretextual and that discrimination motivated its decision, including:

   a. failure to follow its own policies and procedures;

   b. inexplicable deviation from its normal practices and procedures;

   c. asserting false justifications for adverse conduct;

   d. treating Mrs. Gianfrancesco differently than other similarly situated employees;

   e. asserting implausible, inconsistent, and/or contradictory justifications for adverse treatment of Mrs. Gianfrancesco; and,

   f. the absence of credible justification for Mrs. Gianfrancesco's adverse treatment.

57. BJ's purported justification for "separation of employment," or terminating Mrs. Gianfrancesco by relying on false allegations supports an inference of discriminatory intent.

58.     The actual events underlying the false accusations and unjust termination of Mrs. Gianfrancesco were heavily racially charged, as evidenced by Assistant Manager Gabriel's comment that Mrs. Gianfrancesco's brother Mr. Green is "lucky" that the Assistant Manager did not call police because Mr. Green would have been arrested because he is Black.

59.     This fabrication portraying Mrs. Gianfrancesco, a brown Latina woman, as someone presenting a threat of physical aggression or violence, relies on racist stereotypes and is a clear indication of the racial animus that motivated BJ's decision to fire her without credible justification.[2]

60.     BJ's' action of terminating Mrs. Gianfrancesco's employment despite her having no past disciplinary actions and without providing an opportunity for Mrs. Gianfrancesco to question her accusers or to present her version of events, is all evidence that she was treated unequally from her White co-workers.

61.     The fact that Mrs. Gianfrancesco was denied the opportunity to interview for the Lead PIC position and that a less qualified White employee was assigned to the position instead of her also supports an inference of discriminatory intent.

---

[2] This invocation of the classic racist stereotype of the angry black woman is itself further proof of discriminatory animus. *See*, *e.g.*, *Back v. Hastings on Hudson Union Free Sch. Dist*., 365 F.3d 107, 119 (2d Cir. 2004) ("Stereotypical remarks can be evidence that race "played a part" in an adverse action."); *Curry v. Devereux Found.,* 541 F. Supp. 3d 555, 561 (E.D. Pa. 2021) (the invocation of the "Angry Black Woman" stereotype may serve as evidence of discriminatory animus); *Robinson v. City of Atlanta*, No. 10-2036, 2010 WL 11440788, at *7 (N.D. Ga. 2010) (holding that "angry black woman" comments support a claim for discriminatory discharge based on race and sex); *Johnson v. Sch. Dist. of Philadelphia*, No. CV 23-3430, 2024 WL 1773358, at *6 (E.D. Pa. Apr. 24, 2024) ("[Plainitff] identifies a series of comments by her supervisors referring to her as "combative," "angry," and a "gas lighter." Insofar as these comments invoke the angry Black woman trope, they are sufficient at this stage of litigation to give rise to an inference of discriminatory animus."); *Blount v. TD Bank, N.A.*, No. 120CV18805NLHMJS, 2023 WL 4621881, at *13 (D.N.J. July 19, 2023) (concluding references to the Black, female plaintiff as "aggressive," "not a team player," and a "lone wolf" invoked the angry Black woman stereotype); *Young v. Control Sols., LLC*, No. 15-CV-3162, 2017 WL 2633679, at *4 (N.D. Ill. June 19, 2017) ("Angry and its synonyms are, standing alone, innocent words with no racial connotation. They are words, however, with a long history as part of a stereotypical depiction of black women that can trace its roots to the institution of slavery. Although the parties offer limited evidence on this point, there appears to be an academic consensus regarding both the resilience of this stereotype within American society and its continued a word or concept is so pervasively and enduringly linked to a derogatory When a word or concept is so pervasively and enduringly linked to a derogatory stereotype, its use to reference individuals traditionally subject to the stereotype inherently raises the specter of motivation or bias.").

62.     Further, BJ's corporate HR personnel had knowledge of the circumstances of Mrs. Gianfrancesco's termination and their acquiescence in the Club management's termination of Mrs. Gianfrancesco for no credible reason and on the basis of race and color, also supports an inference of discriminatory intent.

### *Race/Color Discrimination*

63.     Mrs. Gianfrancesco is a Latina woman with brown skin and, at all relevant times, belonged to a protected class.

64.     At BJ's Club #393, Mrs. Gianfrancesco was the only Latina/o employee in any type of managerial role.  After she was fired, there were no Latina/o employees in any managerial role at this club and all of the managerial employees were white.

65.     Following Mrs. Gianfrancesco's employment termination, BJ's replaced her and/or had her job duties assumed by one of more employees who are not Latina/o and/or persons of color.

66.     For the reasons discussed above, BJ's conduct constitutes racially motivated and unlawful discrimination under Title VII and the FEPA.

67.     The fact that Mrs. Gianfrancesco is Latina and has brown skin was a motivating factor in the discriminatory treatment that she suffered at the hands of BJ's.

68.     Adverse employment action based in whole or *even in part* on account of race and/or color constitutes prohibited discrimination.

69.     BJ's deviation from its standard business practices and failure to follow its own policies and procedures relative to unlawful discrimination further supports an inference of discriminatory intent.

70.     Furthermore, the implausible reason for termination, lack of a fair investigation, and severity of Plaintiff's punishment all also support an inference of discriminatory intent.

### *Motivation and Harm*

71.     BJ's intent to discriminate against Plaintiff on account of her race and/or color is further established, in part, by the fact that White workers were routinely treated better than Mrs. Gianfrancesco in terms discipline.

72.     Mrs. Gianfrancesco has suffered and will continue to suffer equitable and compensatory damages, including, but not limited to, loss of income, pain and suffering, emotional distress, loss of enjoyment of life, loss of medical and/or other benefits, humiliation, damage to her professional and personal reputation, and other great harm as a result of being discriminated/retaliated against by Defendant in the manner alleged herein.

### VII.    Claims for Relief

73.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 72 of this Complaint in each of the counts below with the same force and effect as if set forth therein.

### Count One
### *Title VII of the Civil Rights Act of 1964,*
### *42 U.S.C. §2000e, et seq*

74.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination on the basis of Plaintiff's race and color  in violation of Title VII, and thereby deprived her of rights secured under Title VII, causing Plaintiff to suffer damages as aforesaid.

### Count Two

### Rhode Island Fair Employment Practices Act
### R.I. Gen. Laws §28-5-1, et seq.

75.      Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment practices against Plaintiff on account of Plaintiff's discrimination on the basis of Plaintiff's race, color, or ethnicity in violation of the FEPA, and thereby and otherwise deprived her of rights secured under the FEPA, causing her to suffer damages as aforesaid.

### Count Three
### Rhode Island Civil Rights Act of 1990,
### R.I. Gen. Laws § 42-112-1, et seq.

76.      Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment practices against Plaintiff on account of Plaintiff's race and/or color in violation of the RICRA, and thereby and otherwise deprived her of rights secured under the RICRA, causing her to suffer damages as aforesaid.

### VIII.  Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Honorable Court grant the following relief:

1.      A declaratory judgment declaring that the acts and/or omissions of Defendant, including, but not limited to those complained of herein, are in violation of Title VII, FEPA, and RICRA;

2.      An injunction directing Defendant to take such affirmative action as is necessary to refrain from such conduct and ensure that the effects of these unlawful employment practices are eliminated and not repeated;

3.      An injunction or other equitable relief, including, but not limited to, an award of back pay, front pay or reinstatement, and other compensation and/or benefits, and to make Plaintiff

whole for all earnings and benefits Plaintiff would have received but for Defendant's unlawful conduct;

4.      An award of compensatory damages;

5.      An award of exemplary or punitive damages;

6.      An award of prejudgment interest, reasonable attorneys' fees, and costs; and,

7.      Such other and further relief as this Court deems just and proper.

## IX.      Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## X.      Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esq., Danilo A. Borgas, Esq., and Shannah M. Kurland, Esq., as trial counsel.

Plaintiff,
Cindy Gianfrancesco
By her attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

Dated:  August 2, 2024

/s/  **Shannah M. Kurland**
**Shannah M. Kurland, Esq. (#9186)**
**Richard A. Sinapi, Esq. (#2977)**
**Danilo A. Borgas, Esq. (#9403)**
2374 Post Road Suite 201
Warwick, RI 02886
Phone:  (401) 739-9690
FAX: (401) 739-9490
Email:  smk@sinapilaw.com
        ras@sinapilaw.com
        dab@sinapilaw.com